UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-143 |
| v. | * | SECTION: "M" |
| KEYIRA GABLE | * | |

\* \* \*

## FACTUAL BASIS

Defendant KEYIRA GABLE ("GABLE") has decided to enter a plea of guilty in this case. Should this matter proceed to trial, the United States would prove beyond a reasonable doubt, through credible testimony and reliable evidence, the following facts. Unless stated otherwise, the following acts occurred within the jurisdiction of the Eastern District of Louisiana.

Special Agents with the U.S. Secret Service, along with detectives with the Jefferson Parish Sheriff's Office (JPSO) and New Orleans Police Department (NOPD), and other members of the Louisiana Financial Crimes Task Force, have been investigating access device fraud and identity theft by Lakisha Williams, Brittany White, GABLE, Jeffery Joseph, Tamika Stevens, Antoine Narcisse, Markita Robertson and others. Agents learned that these individuals would work together to produce and use credit and debit cards with unauthorized or counterfeit information in order to fraudulently obtain goods and services. These individuals would then fraudulently return these goods (a fraudulent "chargeback") to stores in order to have the return value credited to their own bank accounts.

AUSA
Defendant
Defense Counsel

### A. May 2017 Fraud at Matherne's Supermarket.

On May 24, 2017, Williams and GABLE fraudulently purchased $637.03 of goods at Matherne's Supermarket at 1424 W. Airline Hwy., LaPlace, LA. According to store and bank records, Williams and GABLE performed a transaction using the Whitney Hancock Bank account of victim R.H. After the transaction occurred, R.H. received a notice from Whitney Hancock of potential fraudulent activity, and R.H. reported that it was fraudulent.

Secret Service agents obtained the store's surveillance photos that show Williams and GABLE performing a transaction contemporaneously with the time that the fraudulent transaction was reported by Whitney Hancock Bank.

Furthermore, the identity of Williams and GABLE was corroborated by the fact that GABLE was arrested days later on June 3, 2017, in possession of false credit cards. During a search incident to arrest, which occurred at a Kay Jewelers in Slidell, officers seized the false credit cards from GABLE. Officers ran the credit cards and learned that one of them was encoded with victim R.H.'s Whitney Hancock account number, the same account information that was used at Matherne's on May 24, 2017.

### B. June 3, 2017 Arrest of GABLE at Kay Jewelers in Slidell, Louisiana.

On June 3, 2017, Slidell Police Department officers were called to the Kay Jewelers at 150 Northshore Blvd., Slidell, Louisiana. An employee reported that a woman currently in the store (later identified as GABLE) had multiple fraudulent returns at several Kay Jewelers stores in the past. The employee stated that GABLE, who identified herself using another name with initials A.P., had made purchases and fraudulent returns at multiple stores, including the Slidell location, for a total of more than $6,000.00. Furthermore, GABLE was attempting to make a fraudulent return that day totaling $4,518.48. Her scheme involved using stolen credit card account numbers

2

AUSA
Defendant
Defense Counsel

fraudulently to purchase jewelry, and then later returning the jewelry and having the refund be credited to her own bank account without the knowledge of the store employee.

Slidell Police Officer Corey Herzog approached GABLE and advised her of her *Miranda* rights. GABLE stated that she understood her rights. GABLE gave Herzog her Louisiana driver's license stating, "Here's my ID." The license was later determined to be a legitimate Louisiana driver's license in the name of another woman with the initials A.P. GABLE claimed that the license was her license. Furthermore, GABLE claimed that her credit card, also in the name of A.P., was legitimate. Off. Herzog asked GABLE to attempt to make a ten-cent purchase with the card that she presented for the refund. GABLE agreed. She put her card into the store's credit card chip reader, which returned a message that the chip was invalid. GABLE then swiped the card using the magnetic strip. However, the computer system responded that the encoded number on the magnetic strip did not match the number that was embossed on the card.

GABLE then admitted to the officer that her card was fraudulent and stated that the card's magnetic strip actually contained her own bank account number. She stated that she would purchase credit card information from a website on the internet, and then program the account numbers onto the card. GABLE stated that she then would make purchases with stolen account numbers and then make returns with a card programmed with her own bank account number in order to receive the refund from the retailer.

Off. Herzog advised GABLE that she was under arrest. GABLE resisted by pulling and pushing despite the officer's commands. Then, while being walked to the cruiser, GABLE briefly fled but was quickly reapprehended by Off. Herzog. Off. Herzog asked GABLE if she drove to the store. GABLE stated that she took an Uber to the store and did not drive.

3

AUSA 
Defendant
Defense Counsel

On the way to jail, **GABLE** admitted that she had given a false name and provided her real name to the officer. She claimed that she found the driver's license and made cards to match the false identity. Once at jail, Officer Herzog again read **GABLE** her *Miranda* rights, and she executed a written *Miranda* waiver. She gave a written statement admitting that she found A.P.'s identification card and used it to make fraudulent returns for her own benefit.

Officers later asked **GABLE** to give a videotaped statement. She agreed and waived her *Miranda* rights again on tape. She explained how she would get credit card numbers off the internet and then use the numbers later.

Officers checked the debit card in **GABLE**'s possession. The number that was embossed on the card ended in 6699. The magnetic strip was encoded with account number ending in 4154, and it corresponded to an account with Navy Federal Credit Union. Agents subsequently determined that this account number corresponded with **GABLE**'s Navy Federal Credit Union account.

Officers subsequently spoke to the Kay Jeweler security guard who reported that he saw **GABLE** arrive and park a white sedan at the store. Officers located the vehicle and had it towed to the Slidell Police Department. They obtained a search warrant to search the vehicle. Inside the car, officers found, among other items, eleven credit cards with the name of the same woman, A.P., embossed on the front. They ran the cards through a reader to determine if the numbers encoded on the magnetic strip matched the embossed numbers. Officers found that some of the cards had matching numbers, while other cards had encoded numbers that did not match the number embossed on the card. Agents would testify that this evidence is consistent with the co-conspirators' scheme where they use a card with matching numbers for the purchase, but then use a card that has their own bank account information encoded on the magnetic strip to make the

AUSA 
Defendant
Defense Counsel

return and receive the refund into their own bank accounts. Officers also found the authentic Louisiana identification cards in the name of "Keyira Gable."

Again, one of the cards found in the vehicle was encoded with the bank information of R.H., the same card information that Williams and GABLE used to make a fraudulent purchase on May 24, 2017 at Matherne's Supermarket.

U.S. Secret Service agents subsequently located A.P., the person whose identification and name was used by GABLE. A.P. stated that she did not give GABLE permission to use her name, identity, or any of her bank information.

### C. Historical Evidence of Travel and Fraudulent Chargebacks.

In order to investigate the scope of this scheme, agents reviewed subpoenaed bank records for Williams, White, GABLE, Joseph, and others. Their bank accounts showed that they would occasionally receive credits to their bank accounts for the return of merchandise at stores. However, agents could not find the earlier corresponding debit for the purchase. Based on their training and experience, agents suspected that this was further evidence that these co-conspirators were using stolen card information to make purchases, but then using their own card information to chargeback.

Agents then subpoenaed records from JCPenney, TJMaxx, Zales and other stores that appeared on the bank statements for Williams, White, GABLE, Joseph, and others. Agents were able to find the corresponding purchases for the chargebacks that were credited to the conspirators' bank accounts. Those purchases were made using credit/debit card numbers that did not belong to the conspirators. Agents also noted that some of these fraudulent purchases were made in locations outside of Louisiana, which prompted agents to obtain flight records for the alleged conspirators. Agents were able to reconstruct the historical evidence of travel and fraudulent

AUSA 
Defendant
Defense Counsel

chargebacks. The evidence established that Williams, White, GABLE, Joseph, and others would use bank account information that was either stolen from individuals who live in the New Orleans area, or they would obtain stolen bank account information over the internet from individuals in foreign countries. These foreign banks include Westpac Bank (Australia), China Merchants Bank (China), Toronto-Dominion Bank (Canada), and others.

Agents found that on several occasions, GABLE took flights with Williams and White. For example:

- On or about January 8, 2015, GABLE took a Southwest Airlines flight with Williams and White from New Orleans to New York LaGuardia Airport. They then took a return flight together on January 13, 2015.

- On or about May 27, 2016, GABLE took a Southwest Airlines flight with Williams and White from New Orleans to Ft. Lauderdale, FL. The next day, Joseph took a Southwest Airlines flight to Ft. Lauderdale. On May 31, 2016, GABLE, Williams, White, and Joseph all took return flights to New Orleans.

- On or about June 22, 2016, GABLE took a Southwest Airlines flight with Williams and White from New Orleans to Las Vegas.

- On or about August 26, 2016, GABLE took a Southwest Airlines flight with Williams and White to Atlanta. They returned on the same flight on August 28, 2016.

Through a review of GABLE's bank records, agents were able to locate additional fraudulent transactions involving JCPenney that are all consistent with similar fraudulent transactions by Williams, White, and Joseph:

6


AUSA
Defendant
Defense Counsel

- On or about March 23, 2016, **GABLE** obtained a credit of approximately $2,310.93 to her bank account as a result of a fraudulent chargeback from JCPenney in Metairie, Louisiana. The corresponding purchase had been made using a Westpac Bank (Australia) account on March 19, 2016 at the JCPenney in Metairie, Louisiana that was not owned by **GABLE**.

- On or about March 26, 2016, **GABLE** obtained a credit of approximately $3,017.80 to her bank account as a result of a fraudulent chargeback from JCPenney in Lafayette, Louisiana. The corresponding purchase had been made on March 21, 2016 at River Chase Shopping Center in Covington, Louisiana, using a Westpac Bank card. The owner of the Westpac Bank account reported the charge as fraudulent.

- On or about April 25, 2016, **GABLE** obtained a credit of approximately $4,495.60 to her bank account as a result of a fraudulent chargeback from JCPenney in Metairie, Louisiana. The corresponding purchase had been made on April 20, 2016, at Lakeside Shopping Center in Metairie, LA, using a Westpac Bank card account. The owner of the Westpac Bank account reported the charge as fraudulent.

- On or about May 24, 2016, **GABLE** obtained a credit of approximately $3,090.61 to her bank account as a result of a fraudulent chargeback from JCPenney in Metairie, Louisiana. The corresponding purchase had been made on May 15, 2016, at Panama City, FL, using a Westpac Bank card account. The owner of the Westpac Bank account reported the charge as fraudulent.

Agents determined from a review of **GABLE**'s bank records that she had a pattern of deposits to her account through refunds from jewelry stores where there were no corresponding purchases. Agents located approximately $25,000.00 in additional fraudulent transactions

7



AUSA
Defendant
Defense Counsel

between 2014 and 2017 where GABLE received deposits to her account from returns at stores such as Zales, Kay Jewelers, and T.J.Maxx in which there was no corresponding purchase.

Based on witness interviews, store records, bank documents, and other evidence, agents have determined that the total loss intended by GABLE or that was reasonably foreseeable to her through her own actions or the actions of her co-conspirators is between approximately $95,000.00 and $150,000.00.

D. Social Media by GABLE

After GABLE was charged in this matter, she appeared before U.S. Magistrate Judge Janis van Meerveld and was given a bond. As a condition of her pretrial release terms, GABLE was barred from using a cell phone or computer to access the internet. Furthermore, U.S. Magistrate Judge Daniel E. Knowles, III, issued a protective order which notified the defendants that they were not to publicly disseminate any discovery provided by the government.

On or about January 7, 2019, GABLE posted on her Instagram account "_PrettyBlack3". In that posting, GABLE displayed photographs of USSS investigative reports from this case. The report gave accounts of law enforcement interviews with other subjects in this investigation.

Federal agents obtained a search warrant for GABLE's account "_PrettyBlack3", and learned of other posts in January 2019 by GABLE in which she discusses the case with others and specifically says that her codefendants have "ratted," i.e., spoken with investigators. The following is a timeline of some of the relevant postings by GABLE on _PrettyBlack3:

- January 2, 2019: GABLE posted a direct message where she told another person that "I'm on 24 hour house arrest," "I forget I didn't tell u," "the Feds indicted me," and "It's old but the Feds picked it up." This post corroborated the fact that it was indeed GABLE writing these posts.

8



AUSA
Defendant
Defense Counsel

- January 8, 2019: _PrettyBlack3 posted a photo of a USSS report discussing a meeting between federal agents, the Assistant U.S. Attorney, GABLE, and her attorney. The report stated briefly that GABLE decided not to provide information during the meeting. _PrettyBlack3 stated: "no disrespect I'm not taking shit down lol" and, "They tried to drag my name through the dirt." She also referred to another person "rattin'", i.e., cooperating with police.

- January 8, 2019: _PrettyBlack3 posted a photo of the report where another defendant gave a statement to law enforcement. GABLE posted that others had "ratted," i.e., provided information to investigators.

- January 8, 2019: _PrettyBlack3 sent a message stating, "idk what was going on all I know is I did a few returns." "Idk" is common short form for "I don't know." GABLE refers to the fact that she did "returns," i.e., returns of items consistent with actions of other members of the conspiracy.

- January 9, 2019: _PrettyBlack3 posted a message: "anybody who wanna see the paperwork I would politely meet them to let them see it." She further states, "Well all get the same paperwork it's our discovery." This statement is a reference to the documents provided by the government during the discovery process that were subject to the protective order.

The government subsequently filed a motion to revoke GABLE's bond, which Magistrate Judge van Meerveld granted.

AUSA 
Defendant
Defense Counsel

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by GABLE, and it is not a complete statement of all facts described by GABLE to the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for her guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for GABLE's plea of guilty to the charged offenses.

_____  5/12/2020
MATTHEW R. PAYNE          Date
K. PAIGE O'HALE
Assistant United States Attorneys

_____  2-4-20
P. LINDSEY WILLIAMS       Date
Counsel for Keyira Gable

_____  2-4-20
KEYIRA GABLE              Date
Defendant